UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AKAMAI TECHNOLOGIES, INC. and<br>AKAMAI SECURITIES CORPORATION,<br><br>           Plaintiffs,<br><br>      v.<br><br>DEUTSCHE BANK AG,<br><br>           Defendant. | Civil Action No.:<br>1:10 Civ. 10254 (JLT) |

**DEFENDANT DEUTSCHE BANK AG'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO STAY PENDING ARBITRATION**

Defendant Deutsche Bank AG ("Defendant") respectfully submits this memorandum of law in support of its Motion to Stay this action for "control person" liability pending resolution in arbitration of the underlying claims of Plaintiffs Akamai Technologies, Inc. and Akamai Securities Corporation (collectively, "Akamai" or "Plaintiffs") for primary liability against Defendant's subsidiary Deutsche Bank Securities Inc. ("Deutsche Bank Securities").

**PRELIMINARY STATEMENT**

Akamai was a customer of Deutsche Bank Securities and brings this action based on its investment in auction rate securities ("ARS") purchased through Deutsche Bank Securities, not through Defendant Deutsche Bank AG, which is Deutsche Bank Securities' ultimate corporate parent. As Akamai expressly admits in footnote 1 on page 1 of the Complaint, "Akamai's account agreement with Deutsche Bank Securities requires that any dispute with Deutsche Bank Securities be arbitrated before the Financial Institution Regulatory Authority" ("FINRA"), but the arbitration agreement "does not cover Deutsche Bank AG." (Compl. ¶ 1, n.1.) Defendant believes that Akamai will commence such an arbitration against Deutsche Bank Securities

shortly, consistent with that footnote.  Indeed, there is no tolling agreement in effect, and the same Plaintiffs' counsel have represented other claimants in connection with auction rate securities claims in arbitrations against Deutsche Bank Securities.  Accordingly, Deutsche Bank AG brings this motion to stay this action for vicarious liability pending the resolution of Akamai's underlying claims for primary liability in the arbitration proceeding.

The Complaint expressly acknowledges that the "control person" claims brought here are based upon the alleged primary liability of Defendant's subsidiary, Deutsche Bank Securities. Plaintiffs do not and could not allege that they had any dealings with Defendant Deutsche Bank AG, the corporate parent.  Plaintiffs should not be permitted to circumvent the arbitration agreement -- and presumably seek more expensive and expansive discovery in federal court than would be permitted in arbitration -- by bringing this action against Deutsche Bank AG while pursuing an arbitration claim against Deutsche Bank Securities.  Indeed, Plaintiffs' claims against Deutsche Bank AG in this action are dependent upon and overlap with the alleged underlying "primary" violations by Deutsche Bank Securities.  Plaintiffs admit those underlying claims against Deutsche Bank Securities are subject to an arbitration agreement.

As shown herein, the Court has broad inherent power to stay this litigation pending the resolution of Plaintiffs' arbitration claims against the entity with which Plaintiffs did business, as other courts have done in similar circumstances.  The undisputed facts of this matter demonstrate that a stay is warranted because Akamai expressly agreed to arbitrate the subject matter of the underlying securities claims against Deutsche Bank Securities.  The interests of this Court and the parties in efficiency, the risk of inconsistent rulings, and the policy favoring arbitration (including prejudice that could result to Deutsche Bank Securities) all warrant a stay.

Accordingly, this action against Deutsche Bank AG should be stayed until the resolution of Plaintiffs' claims against Deutsche Bank Securities in a FINRA arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Parties

According to the Complaint, Plaintiff Akamai Securities Corporation is a Massachusetts securities corporation, and its sole purpose is to hold and invest the capital contributions made to it by Akamai Technologies, Inc. (Compl. ¶ 9.) Plaintiff Akamai Technologies, Inc. is a publicly held company that develops and markets Internet technology. (*Id.*)

In November 2005, Akamai opened a corporate cash management account at Deutsche Bank Securities. (Compl. ¶ 13.) Akamai admits, as it must, that it was a client of Deutsche Bank Securities, "which served as Akamai's investment advisor and broker," and that Deutsche Bank Securities was the FINRA member broker/dealer through which Akamai made the investments in the auction rate securities at issue. (Compl. ¶¶ 1 at n.1, 2, 13, 24.)

The Defendant in this action, Deutsche Bank AG, is the ultimate corporate parent of Deutsche Bank Securities. (Compl. ¶ 1.) According to Plaintiffs, Deutsche Bank AG is "a major global banking institution based in Frankfurt am Main, Germany." (Compl. ¶ 10.) Deutsche Bank AG is not a FINRA member. (*See id.* at n.1.) Akamai alleges no direct dealings with Deutsche Bank AG. (*See* Compl. ¶¶ 39-43.) Instead, Plaintiffs seek to hold Deutsche Bank AG vicariously liable for the alleged fraud by Deutsche Bank Securities that is required to be litigated in a FINRA arbitration.

### The Instant Action

On February 12, 2010, Akamai commenced this lawsuit against Deutsche Bank AG even though Akamai had no dealings with Deutsche Bank AG, and cannot allege otherwise.

Crucially, Akamai's Complaint makes no specific allegations of any misstatement or omission by Deutsche Bank AG. (*See* Compl. ¶¶ 11-38.)[1] Instead, the Complaint asserts that Deutsche Bank AG is vicariously liable "because at all relevant times it had the ability to control Deutsche Bank Securities and it exercised that control." (Compl. ¶ 1.) (*See, e.g.*, Compl. ¶ 39 (alleging that Deutsche Bank AG "had access to -- and the ability to prevent -- the false and misleading statements made by Deutsche Bank Securities regarding ARS").)

Based solely on such conclusory allegations, Plaintiffs assert two causes of action against Deutsche Bank AG: (1) violation of Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, and (2) violation of Section 410(b) of the Massachusetts Uniform Securities Act, M.G.L. 110A § 410(b). Both of those causes of action require Plaintiffs to plead and prove an underlying violation of the securities laws by Deutsche Bank Securities, and that Deutsche Bank AG was a "control person." As set forth below, there can be no dispute that these purported "control person" claims are dependent upon the underlying claims against Deutsche Bank Securities, which Plaintiffs admit are subject to arbitration.[2]

This Court, however, need not -- and should not -- embroil itself in determining Akamai's claims prior to resolution of arbitration.[3] The very point of binding arbitration is to provide a

---

[1] Plaintiffs' Complaint misleadingly defines "Deutsche Bank" as referring to "Deutsche Bank AG and Deutsche Bank Securities collectively" (Compl. ¶ 1) and then alleges misconduct by "Deutsche Bank" (and sometimes "Deutsche Bank Securities" specifically) without identifying any alleged misconduct by Deutsche Bank AG. Deutsche Bank AG is only mentioned specifically in Paragraphs 1, 10, and 39-43 of the Complaint. Paragraph 23 makes clear that it is Deutsche Bank Securities, not Deutsche Bank AG, that conducts business related to auction rate securities in the United States. (Compl. ¶¶ 1, 10, 23, 39-43.)

[2] Deutsche Bank AG denies that Plaintiffs have any basis for alleging "control person" liability or for alleging underlying federal or state law securities claims. If this case proceeds, Deutsche Bank AG intends to move to dismiss the Complaint, including for failure to state a claim and failure to plead with particularity.

[3] After receiving the Complaint, counsel for Deutsche Bank AG attempted to discuss with Plaintiffs' counsel the necessity of this court action in light of the arbitration agreement with Deutsche Bank Securities. In the interests of efficiency, counsel for Deutsche Bank AG proposed that this court

4

quick and expedient method of dispute resolution.  That goal, which has been repeatedly endorsed by courts across the country, would be entirely compromised if an arbitration claimant could merely bring a separate action outside the arbitration process against a non-signatory corporate parent.  To prevent unnecessary expense, this Court should exercise its discretion to stay this case pending the outcome of a FINRA arbitration between Plaintiffs and Deutsche Bank Securities, which will have a direct impact on the claims that Plaintiffs assert in this action.  Here, a stay of this action is in the interest of judicial economy and may avoid unnecessary and duplicative litigation.

## ARGUMENT

### THIS ACTION SHOULD BE STAYED PENDING RESOLUTION IN FINRA ARBITRATION OF PLAINTIFFS' UNDERLYING CLAIMS AGAINST DEUTSCHE BANK SECURITIES BASED UPON THE SAME FACTUAL ALLEGATIONS.

This action for vicarious liability against the corporate parent should be stayed pending resolution in FINRA arbitration of Plaintiffs' claims against the subsidiary with which it did business, Deutsche Bank Securities.  It is well established that a district court retains the "inherent discretionary power to control its own docket," including the "discretionary power to stay" any proceedings in "the interest of justice."  *Taunton Gardens Co. v. Hills*, 557 F.2d 877, 878-79 (1st Cir. 1977) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).  Indeed, the First Circuit has expressly stated:

> [The United States Supreme Court in] *Landis* established that, as a question of power, the district court had discretion to stay suit pending resolution of another which, "even if it should not dispose of all the questions involved, would certainly narrow the issues in the pending case and assist in the determination of the questions of law involved."

---

action be voluntarily stayed until the claim against Deutsche Bank Securities is resolved in arbitration.  Plaintiffs' counsel refused to consent to a stay.

5

*Id.* at 879 (quoting *Landis*, 299 U.S. at 255); *see also Spencer Furniture, Inc. v. Media Arts Group, Inc.*, 349 F. Supp. 2d 49 (D. Mass. 1993) (holding painter, non-signatory to arbitration agreement, was entitled to a stay pending arbitration between paint dealer and corporate distributor); *Ainbinder v. Wall Street Clearing Co.*, No. 92 Civ. 7315 (SS), 1993 WL 106408 (S.D.N.Y. 1993) (staying plaintiff's claims, which were "seemingly asserted simply on the basis of defendant's ownership interest," pending resolution of the underlying claims in arbitration, pursuant to "court's inherent power").[4]

Before reaching the merits of Plaintiffs' "control person" claims, this action should be stayed pending resolution of Plaintiffs' underlying claims against Deutsche Bank Securities in FINRA arbitration because the arbitration would indisputably narrow the issues in this case -- Deutsche Bank AG cannot be vicariously liable if Deutsche Bank Securities did not commit an underlying violation. Plaintiffs concede that the alleged underlying "primary" violation by Deutsche Bank Securities is subject to FINRA arbitration. Allowing this case to proceed before a FINRA arbitration concludes would amount to a waste of judicial resources and impose undue expense on the parties, as the FINRA arbitration may be dispositive of Plaintiffs' claims. Moreover, it would unfairly permit Plaintiffs to circumvent their arbitration agreement, raises a serious risk of inconsistent (and redundant) discovery rulings, and potentially could result in inconsistent determinations on the merits. Parallel litigation of these undeniably closely related matters would also violate a longstanding federal policy favoring the arbitration of private disputes and judicial deference to the decisions of arbitrators.

---

[4]  Defendant brings this motion to stay pursuant to this Court's inherent authority, not pursuant to 9 U.S.C. § 3, although this Court also could grant the stay pursuant to that section. *See Med-IM Development, Inc. v. General Electric Capital Corp.*, No. H-07-1618, 2008 WL 901489 (S.D. Tex. Mar. 31, 2008) (explaining that stay is mandatory under Federal Arbitration Act, but even "if a mandatory stay under section 3 is not applicable, a court may still exercise its discretionary power to stay claims between nonarbitrating parties pending the outcome of arbitration as a means of controlling and managing the docket").

A recent decision in an auction rate securities case in federal district court in California is directly on point. In *Al-Thani v. Wells Fargo & Co.*, No. C-08-1745-CW, 2009 WL 55442 (N.D. Cal. Jan. 7, 2009) ("*Wells Fargo*"), the court stayed an action in which a plaintiff attempted to hold a corporate parent liable as a "control person" in connection with her purchase of auction rate securities through the broker subsidiary. The plaintiff sued her broker as well as the brokerage firm Wells Fargo Investments, LLC ("WFI") and its corporate parent Wells Fargo & Co. ("WFC"), along with others. WFI and plaintiff's broker were both FINRA members and moved to compel arbitration. WFC, the corporate parent, which was not a FINRA member, moved to dismiss and to stay. Like in this case, the plaintiff in *Wells Fargo* made conclusory allegations and did not allege any specific facts to support the conclusion that WFC was a controlling person. The court held that, "although it could be possible" for plaintiff to amend her complaint to allege facts sufficient to support the conclusion that WFC was a control person, "even if she did, WFC's liability would be premised on the liability of the WFI Defendants." *Id.* at *9. "Because the liability of the WFI Defendants will be determined by arbitration," the court stayed the proceeding against WFC, the corporate parent, pending arbitration of the underlying claims. *Id.* The court refused to allow any amendment at that time, stating, "[f]ollowing the conclusion of the arbitration proceedings, Plaintiff may move to amend the complaint if doing so would be appropriate given the outcome" of the arbitration. *Id.*

Other courts, ruling in similar contexts, have reached the same conclusion. In *Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679 (5th Cir. 1976), for example, the Fifth Circuit affirmed the trial court's decision staying claims against a parent and successor corporation pending arbitration, although they were not parties to the arbitration agreement. The court noted that "[t]he charges against these two defendants were based on the same operative

7

facts and were inherently inseparable from the [arbitrable] claims. [Therefore], [i]f the parent corporation was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." 530 F.2d at 681. *See also, e.g., Western Int'l Media Corp. v. Johnson*, 754 F. Supp. 871 (S.D. Fla. 1991) (stay of proceedings on claim involving parties not covered by arbitration agreement was appropriate pending arbitration involving other parties subject to arbitration on grounds that allowing the action to proceed could lead to inconsistent results and unnecessary duplication and waste); *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996) (disapproving of commencing a tactical lawsuit and noting that when "a party to an arbitration agreement, trying to get around it, sues … some related party with which it has no arbitration agreement, in the hope that the claims against the other party will be adjudicated first and have preclusive effect in the arbitration … [it] should not be allowed to succeed"); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75-76 (2d Cir. 1997) (same).

Here, as in the above cases, there are ample grounds warranting a stay of this federal action. The gravamen of this dispute is Plaintiffs' allegation that Deutsche Bank AG is vicariously liable because its subsidiary, Deutsche Bank Securities, allegedly misrepresented or omitted material facts with regard to auction rate securities that Akamai purchased in November 2005 through February 2008. (Compl. ¶¶ 13, 24-27, 35-37.) These are the very same issues that are subject to the arbitration provision in Akamai's customer agreement, as Plaintiffs expressly admit. (*See* Compl. ¶ 1, n.1.) Indeed, Plaintiffs' claim under Section 20(a) of the Securities Exchange Act of 1934 is dependent upon an underlying violation of Section 10(b) by Deutsche Bank Securities. *See ACA Financial Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 67 (1st Cir. 2008) ("The plain terms of section 20(a) indicate that it only creates liability derivative of an

8

underlying securities violation."). Similarly, Plaintiffs' claim under Section 410(b) of the Massachusetts Uniform Securities Act is dependent upon an underlying violation of the blue sky laws by Deutsche Bank Securities. *See Sheinkopf v. Stone*, 927 F.2d 1259, 1270 (1st Cir. 1991). In bringing this duplicative action against Deutsche Bank Securities' corporate parent Deutsche Bank AG -- which had no dealings with Akamai regarding the auction rate securities at issue or otherwise -- Akamai apparently seeks to burden Deutsche Bank AG and improperly expand its tools for discovery to gain some type of leverage against Deutsche Bank Securities.

The outcome of a FINRA arbitration by Akamai against Deutsche Bank Securities will directly impact Plaintiffs' claims against Deutsche Bank AG in this case. Indeed, Plaintiffs cannot dispute that if they prevail in an arbitration, there would be nothing left to recover in this action. Conversely, if Deutsche Bank Securities prevails in the arbitration, the decision will likely be dispositive of Plaintiffs' "control person" claims arising out of the same conduct. *See, e.g.*, *Duhaime v. John Hancock Mut. Life. Ins. Co.*, 200 Fed. Appx. 6, 2006 WL 1752425, at **2-3 (1st Cir. 2006) ("The claims ... were excluded ... on claim-preclusion grounds, inasmuch as claims involving those same policies had been the subject of a 1995 NASD arbitration award."); *Chestnut Hill Dev. Corp. v. Otis Elevator Co.*, 739 F. Supp. 692, 697 (D. Mass. 1990) (preclusive effect can arise from arbitration awards); *TLT Constr. Corp. v. A. Anthony Tappe & Assocs., Inc.*, 48 Mass. App. Ct. 1, 4-10 (1999) (same); *see also Hammad v. Lewis*, 2009 WL 2358606, *2 (D.D.C. Aug. 3, 2009) (holding decisions of a FINRA panel "normally provide the type of finality sought by courts to be protected by collateral estoppel"). Accordingly, if the Court stays this action pending resolution of FINRA arbitration, there is a high likelihood, if not an outright certainty, that the FINRA Panel's decision in the FINRA arbitration will resolve or dramatically limit Plaintiffs' claims in this case. Accordingly, judicial economy and efficiency,

the federal policy favoring arbitration of disputes, and the parties' economic interests weigh heavily in favor of staying this action pending resolution of FINRA arbitration.

Moreover, Plaintiffs' decision to file the present action in this Court first, before filing a FINRA arbitration against Deutsche Bank Securities, appears designed to achieve a tactical goal to prejudice the arbitrating party. Deutsche Bank Securities is not a party to this proceeding, but Plaintiffs ask this Court to make rulings based upon Deutsche Bank Securities' alleged misconduct. This prejudice to Deutsche Bank Securities is further reason to grant a stay.

This Court should exercise its inherent power to stay any further proceedings in this action pending the outcome of a FINRA arbitration against Deutsche Bank Securities. Plaintiffs will suffer no prejudice from a stay. When the FINRA arbitration is concluded, this action can proceed if appropriate and necessary. This is not prejudice -- it is judicial economy.

## CONCLUSION

For all the foregoing reasons, Defendant Deutsche Bank AG respectfully requests that this Court enter an Order staying this action pending resolution of Plaintiffs' claims against Deutsche Bank Securities in FINRA arbitration.

Dated:  April 13, 2010

RESPECTFULLY SUBMITTED:

DEUTSCHE BANK AG,
Defendant,

By its attorneys:

/s/ John A. Pappalardo
John A. Pappalardo, BBO #388760
Victor H. Polk, Jr., BBO #546099
GREENBERG TRAURIG, LLP
One International Place
Boston, MA  02110
Tel.: (617) 310-6000
Fax: (617) 310-6001
pappalardoj@gtlaw.com
polkv@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via U.S. first class mail to those indicated as non-registered participants on April 13, 2010.

/s/ John A. Pappalardo