UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
AKAMAI TECHNOLOGIES, INC. and      *
AKAMAI SECURITIES CORPORATION,     *
                                   *
        Plaintiffs,                *
                                   *
   v.                              *   Civil Action No. 10-10254-JLT
                                   *
DEUTSCHE BANK AG,                  *
                                   *
        Defendant.                 *
                                   *
```

MEMORANDUM

February 15, 2011

TAURO, J.

I.      Introduction

Plaintiffs, Akamai Technologies, Inc. and Akamai Securities Corporation (collectively, "Akamai"), allege that Deutsche Bank Securities, Inc. ("DBS"), the wholly owned subsidiary of Defendant Deutsche Bank AG, wrongfully invested $217 million in toxic auction-rate securities ("ARS"). Plaintiffs assert that Defendant is liable under section 20(a) of the Securities and Exchange Act of 1934[1] and Massachusetts General Laws chapter 110A, section 410(b). Presently at issue are Defendant's Motion to Dismiss [#22] and Plaintiff's Motion for Specific Discovery [#27]. For the following reasons, the Motion to Dismiss is DENIED and the Motion for Specific Discovery is MOOT.

---

[1] 15 U.S.C. § 78a et seq.

II.   Background[2]

DBS served as Plaintiffs' investment advisor and broker.[3] Plaintiffs instructed DBS to invest in safe and liquid securities because Plaintiffs needed ready access to the money to fund their operations.[4] DBS represented to Plaintiffs that ARS[5] were highly liquid investments that met Plaintiffs' investment guidelines, and DBS further represented that no auction for these securities

---

[2] Because the issues analyzed here arise in the context of two motions to dismiss, this court presents the facts as they are related in Plaintiffs' Complaint, Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiffs, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).
   Additionally, Defendant's Memorandum of Law in Support of Its Motion to Dismiss raises factual matters that cannot be resolved on a motion to dismiss. See, e.g., Def. Deutsche Bank AG's Mem. Law Supp. Its Mot. Dismiss 3, 4–5, 7–8, 9–11, 20–21, 22, 28 [#25] [hereinafter Def.'s Mem. Law]. For the purposes of this analysis, this court accepts the facts as presented in Plaintiffs' Complaint rather than in Defendant's Memorandum.

[3] Compl. ¶ 2 [#1].

[4] Compl. ¶¶ 2, 11, 14 [#1].

[5] ARS typically are comprised of long-term debt obligations, often with maturity dates of thirty years or more. Id. ¶ 15. The interest rate for ARS are set at auctions, which typically are held every seven, fourteen, twenty-eight, or thirty-five days. Id. ¶ 16. At such an auction, prospective buyers submit bids to an auction agent. Id. ¶ 17. Each bid consists of the par value of the securities that the buyer wishes to purchase and the minimum interest rate that the buyer is willing to accept. Id. In successful auctions, ARS typically trade at par. Id.
   Each ARS has a maximum interest rate that the issuer is contractually obligated to pay to the holder of the security. Id. ¶ 18. In failed auctions, there are insufficient bids below the maximum rate to cover all of the outstanding securities. Id. If an auction fails, the auction agent sets the interest rate at the "default rate," a rate specified in the offering documentation for the specific ARS. Id. ¶ 20.
   The default rate for the ARS at issue here is much lower than the rate for other types of ARS. Id. ¶ 21.

had ever failed.[6]

Defendant, however, knew at the time that ARS were riskier than it represented to Plaintiffs and that auctions had indeed failed.[7] By no later than August 2007, Defendant also knew that the demand for ARS was diminishing and that investors in ARS faced a risk that the auctions for ARS would fail, and that customers' money would therefore be frozen.[8] But Defendant did not reveal those risks to Plaintiffs.[9] Nor did Defendant disclose to Plaintiffs that Defendant and other financial institutions were secretly supporting the ARS market.[10] As one such means of supporting the ARS market, Defendant and other financial institutions were party to or aware of secret side deals with ARS issuers to ensure that auctions did not fail due to lack of demand.[11] In addition, through strategic and undisclosed bidding in ARS auctions, Defendant and other financial institutions sought to set artificially low rates for ARS to make the securities appear less risky and more liquid than they actually were.[12] Plaintiffs thus remained unaware of the increasing liquidity risk that ARS posed.[13]

As a result of its concerns over the potential illiquidity of these securities, Defendant

---

[6] Compl. ¶¶ 2, 24, 25, 35 [#1].

[7] Compl. ¶¶ 3, 26, 28 [#1].

[8] Compl. ¶¶ 3, 29, 31 [#1].

[9] Compl. ¶¶ 3, 29, 30 [#1].

[10] Compl. ¶¶ 3, 32 [#1].

[11] Compl. ¶ 3 [#1].

[12] Compl. ¶ 3 [#1].

[13] Compl. ¶ 3 [#1].

undertook to reduce its own exposure to ARS in the fall of 2007.[14] At the same time that it was reducing its own exposure, DBS continued to tout ARS to Plaintiffs as safe and liquid investments, and DBS approximately doubled Plaintiffs' ARS holdings.[15]

In February 2008, the market for the ARS held by Plaintiffs collapsed.[16] Plaintiffs held well over $200 million in illiquid securities that DBS had improperly funneled into their account.[17] The market collapse was the result of the undisclosed decision by Defendant and other banks to stop supporting the ARS market in February 2008, and this decision caused the securities in Plaintiffs' account to freeze.[18]

Defendant has been the subject of multiple regulatory investigations and adverse findings regarding its improper ARS sales practices.[19] As part of settlements in connection with these investigations, Defendant has had to agree to buy back, at the full face value, ARS from all its individual retail clients and smaller institutional players and pay a $15 million fine.[20] The settlement also requires Defendant to provide "liquidity solutions" to institutional investors like

---

[14] Compl. ¶¶ 4, 33 [#1].

[15] Compl. ¶¶ 4, 34 [#1]. In July 2007, ARS represented forty-three percent of Plaintiffs' holdings. By February 2008, DBS had invested over eighty-four percent of Plaintiffs' portfolio in ARS. Compl. ¶ 34 [#1].

[16] Compl. ¶¶ 5, 36 [#1].

[17] Compl. ¶ 5 [#1].

[18] Compl. ¶¶ 6, 36 [#1].

[19] Compl. ¶ 7 [#1]. Defendant has been investigated by, among others, the Securities and Exchange Commmission and the North American Securities Administrators Association. Id.

[20] Compl. ¶ 7 [#1].

Plaintiffs, which Defendant has failed to do.[21] In fact, Defendant has not provided Plaintiffs with any redress for the impairment and illiquidity of the ARS in Plaintiffs' account, which remains frozen.[22]

III. Discussion

Defendant seeks to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and the Private Securities Litigation Reform Act of 1995[23] ("PSLRA").[24] Specifically, Defendant argues that "Plaintiffs' 'control person' liability claims should be dismissed both for failure to plead facts that support any underlying claim of securities fraud and for failure to plead facts that support a claim that Defendant is a 'control person.'"[25] Defendant's arguments fail for the following reasons.

To state a claim for liability under section 20(a) of the Exchange Act, a plaintiff must plead (1) "an underlying violation of the same chapter of the securities laws by the controlled entity" and (2) "control of the primary violator by defendant" with "culpable participation."[26] Here, the underlying violation that Plaintiffs must properly plead is a violation of section 10(b) of the Exchange Act.

---

[21] Compl. ¶ 7 [#1].

[22] Compl. ¶ 8 [#1].

[23] 15 U.S.C. § 78u-4.

[24] Def. Deutsche Bank AG's Mot. Dismiss, 1 [#22].

[25] Def.'s Mem. Law, 1 [#25].

[26] Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 & n.6 (1st Cir. 2002) (citing SEC v. First Jersey Secs., Inc., 101 F.3d 1450, 1472–73 (2d Cir. 1996)).

The elements of a 10(b) claim are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[27] Defendant challenges the sufficiency of Plaintiffs' pleadings with regard to each element.[28]

First, Defendant argues that Plaintiffs failed to plead any misleading statements or omissions with the specificity required under Rule 9(b) and the PSLRA.[29] But this court is satisfied that Plaintiffs have pled the material misrepresentations and omissions with sufficient specificity. The Complaint challenges each specific ARS transaction that DBS undertook on behalf of Plaintiffs.[30] And Plaintiffs' failure to identify the DBS employees who made specific statements about ARS is irrelevant.[31] Plaintiffs' claim is essentially a claim of omission of material facts—that is, Defendant's failure to disclose the risk of ARS. Plaintiffs cannot identify a speaker if the heart of the claim is a failure to disclose. To the extent that Plaintiffs' claim is one of misrepresentation, it is "reasonable to presume" that the ARS purchases were prepared

---

[27] Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008); see ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008).

[28] See Def.'s Mem. Law, 14 [#25].

[29] Def.'s Mem. Law, 15 [#25].

[30] See Compl. ¶¶ 24–26, 30, 34 [#1] (alleging that each such transaction was based upon material misrepresentations and omissions about the risks of ARS).

[31] See Def.'s Mem. Law, 15 [#25] (arguing that Plaintiffs' Complaint "totally fails to satisfy the requirements of Rule 9(b) and the PSLRA" because it does not identify the DBS employees who made specific statements).

6

collectively by the DBS employees responsible for Plaintiffs' account.[32]

Moreover, Defendant's contention that it owed Plaintiffs no duty to disclose material facts[33] does not excuse it, as Defendant in fact owed Plaintiffs a broad fiduciary duty.[34] Additionally, if an entity decides to make a disclosure, as Defendant did in its statements regarding ARS, that entity must ensure that the disclosure is "complete and accurate."[35]

With regard to the second element, Defendant argues that Plaintiffs have not properly pled scienter.[36] But for a claim under section 20(a), the PSLRA's heightened pleading standard for scienter is inapplicable.[37] Plaintiffs are not required, therefore, to meet the "strong inference"

---

[32] In re Raytheon Sec. Litig., 157 F. Supp. 2d 131, 152 (D. Mass. 2001) (quoting Wool v. Tandem Computers Inc., 818 F.2d 1433, 1440 (9th Cir. 1987)).

[33] See Def.'s Mem. Law, 17 [#25].

[34] See Pearce v. Duchesneau Group, Inc., 392 F. Supp. 2d 63, 70 (D. Mass. 2005) ("[W]here the account is 'discretionary,' meaning that the customer entrusts the broker to select and execute most if not all of the transactions without necessarily obtaining prior approval for each transaction, the broker assumes broad fiduciary obligations that extend beyond individual transactions." (quoting Patsos v. First Albany Corp., 433 Mass. 323, 333–34 (2001))); cf. SEC v. Zandford, 535 U.S. 813, 823 (2002) ("[A]ny distinction between omissions and misrepresentations is illusory in the context of a broker who has a fiduciary duty to her clients." (citing Chiarella v. United States, 445 U.S. 222, 230 (1980); Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153 (1972))).

[35] Backman v. Polaroid Corp., 893 F.2d 1405, 1414 (1st Cir. 1990).

[36] See Def.'s Mem. Law, 22–23 [#25].

[37] Brody v. Stone & Webster, Inc. (In re Stone & Webster, Inc.), 414 F.3d 187, 201 (1st Cir. 2005) ("[T]he strong-inference requirement of the PSLRA does not apply. The statute states that the strong-inference requirement applies only where the plaintiff's recovery depends on proof that "the defendant acted with a particular state of mind." The obligation to prove that the controlled corporation acted with scienter does not involve an obligation to prove "that the defendant acted with a particular state of mind" (internal citation omitted)); see Quaak v. Dexia, S.A., 445 F. Supp. 2d 130, 147–48 (D. Mass. 2006).

requirement of the PSLRA.[38] The appropriate alternative pleading standard is thus Federal Rule of Civil Procedure 9(b).[39] Under Rule 9(b), a plaintiff must "'set forth specific facts to make it reasonable to believe that defendants knew that a statement was fraudulent or misleading.'"[40] Here, Plaintiffs have alleged sufficient facts such that it is reasonable that believe that Defendant knew that its statements regarding ARS were false and misleading.

Third, Defendant argues that Plaintiffs failed to plead that any of the alleged misstatements or omissions were made in "connection with the purchase or sale of a security."[41] But the Complaint alleges that Defendant invested in ARS on behalf of Plaintiffs[42] and even alleges that during the relevant time period, Defendant approximately doubled Plaintiffs' ARS holdings.[43] Defendant's argument therefore fails.

Fourth, Defendant argues that Plaintiffs have failed to plead reliance.[44] A plaintiff pleading reliance must plead individual reasonable reliance on a material misrepresentation.[45] Here, this court agrees with Plaintiffs that the "very premise of the complaint is that Akamai relied on DBS[] for brokerage and cash management services in its discretionary account and on [DBS's]

---

[38] See Stone & Webster, 414 F.3d at 201; Quaak, 445 F. Supp. 2d at 147–48.

[39] See Quaak, 445 F. Supp. 2d at 148.

[40] Id. (quoting Lucia v. Prospect St. High Income Portfolio, 26 F.3d 170, 174 (1st Cir. 1994)).

[41] ACA Fin. Guar. Corp., 512 F.3d at 58.

[42] See Compl. ¶¶ 1, 2, 13, 34 [#1].

[43] See Compl. ¶¶ 4, 34 [#1].

[44] See Def.'s Mem. Law, 19–22 [#25].

[45] See Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007).

8

representations that DBS[] would abide by its instructions to purchase only safe and liquid investments."[46] For that reason, Plaintiffs have properly pled reasonable reliance.

Finally, Defendant argues that Plaintiffs have not pled any cognizable economic loss or loss causation.[47] A plaintiff must allege that the defendant's misconduct caused an economic loss.[48] To plead loss causation, a complaint "need[] only 'provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind.'"[49] Here, Defendant argues that Plaintiffs' loss causation is the allegation that Defendant caused the ARS market to freeze.[50] Actually, the loss causation is that "but for [Defendant's] misconduct, Akamai would not have owned ARS when the ARS market froze."[51] This is a causal connection that Plaintiffs have pled sufficiently.

Defendant also argues that Plaintiffs have failed to adequately plead that Defendant is a "control person."[52] A claim under section 20(a) must allege a defendant's "control of the primary violator."[53] As the First Circuit has explained, "[t]o meet the control element, the alleged

---

[46] Pls.' Mem. Opp'n Deutsche Bank AG's Mot. Dismiss Compl., 16 [#30].

[47] See Def.'s Mem. Law, 23–26 [#25].

[48] See 15 U.S.C. § 78u-4(b)(4).

[49] In re Credit Suisse-AOL Sec. Litig., 465 F. Supp. 2d 34, 46 (D. Mass. 2006) (quoting Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005)).

[50] See Def.'s Mem. Law, 24 [#25].

[51] Pls.' Mem. Opp'n Deutsche Bank AG's Mot. Dismiss Compl., 19 [#30].

[52] See Def.'s Mem. Law, 26 [#25].

[53] Stone & Webster, 414 F.3d at 194 (citing 15 U.S.C. § 78t(a); Aldridge, 284 F.3d at 84–85).

9

controlling person must not only have the general power to control the company, but must also actually exercise control over the company."[54] Quite simply, control is "a question of fact that 'will not ordinarily be resolved summarily at the pleading stage.'"[55] Because Plaintiffs have clearly pled Defendant's control over DBS,[56] it is premature for Defendant to challenge that element.

Because this court hereby denies Defendant's Motion to Dismiss, the PSLRA's automatic stay on discovery is no longer in effect.[57] For that reason, Plaintiffs' Motion for Specific Discovery to Preserve Evidence and Prevent Undue Prejudice is moot and the Parties may proceed with discovery.

IV.     Conclusion

For the foregoing reasons, the Motion to Dismiss [#22] is DENIED and the Motion for Specific Discovery [#27] is MOOT.

IT IS SO ORDERED.

       /s/ Joseph L. Tauro  
       United States District Judge

---

[54] Aldridge, 284 F.3d at 85 (citing Sheinkopf v. Stone, 927 F.2d 1259, 1270 (1st Cir. 1991); Harrison v. Dean Witter Reynolds, Inc., 974 F.2d 873, 880–81 (7th Cir. 1992)).

[55] Bielski v. Cabletron Sys., Inc. (In re Cabletron Sys., Inc.), 311 F.3d 11, 41 (1st Cir. 2002) (citing 2 T.L. Hazen, Treatise on the Law of Securities Regulation § 12.24(1) (4th ed. 2002)); Quaak, 445 F. Supp. 2d at 148 (quoting Cabletron, 311 F.3d at 41; Brumbaugh v. Wave Sys. Corp., 416 F. Supp. 2d 239, 259 (D. Mass. 2006)).

[56] See Compl. ¶¶ 39–43 [#1].

[57] See 15 U.S.C. § 78u-4(b)(3)(B) ("In any private action arising under this title, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss . . . .").