# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AKAMAI TECHNOLOGIES, INC. and<br>AKAMAI SECURITIES CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>DEUTSCHE BANK AG,<br><br>Defendant. | Civil Action No.:<br>1:10 Civ. 10254 (JLT) |

## DEFENDANT DEUTSCHE BANK AG'S
## ANSWER AND AFFIRMATIVE DEFENSES

Defendant Deutsche Bank AG ("Defendant" or "DB AG") respectfully submits this Answer and Affirmative Defenses to the Complaint filed by plaintiffs Akamai Technologies, Inc. and Akamai Securities Corporation (collectively, "Plaintiffs" or "Akamai") dated February 12, 2010, and states as follows:

1.     Admits that Akamai invested in auction rate securities ("ARS") through its broker, Deutsche Bank Securities, Inc. ("DBSI"), which is an indirect subsidiary of DB AG. Admits that Akamai's account agreement with DBSI requires Akamai to arbitrate any claims against DBSI before the Financial Institution Regulatory Authority ("FINRA"). Admits that Akamai's account agreement with DBSI does not require Akamai to arbitrate its purported claims against DB AG. Denies that DB AG had the ability to or actually exercised "control" over DBSI under Section 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.* and M.G.L. c. 110A, sec. 410(b), and denies the remaining allegations of paragraph 1 of the Complaint.

2.      Admits that DBSI served as Akamai's broker.  Admits that Akamai's investment guidelines expressly provided that ARS were permissible investments, and refers to Akamai's Treasury Policy Investment Management Guidelines for the contents thereof.   Denies the remaining allegations of paragraph 2 of the Complaint.

3.      Denies the allegations of paragraph 3 of the Complaint.

4.      Admits that Akamai continued to invest in ARS after the fall of 2007, and denies the remaining allegations of paragraph 4 of the Complaint.

5.      Admits that in February 2008, when ARS experienced market failures, Akamai held approximately $200 million in student loan auction rate securities ("SLARS") in its account at DBSI.  Denies the remaining allegations of paragraph 5 of the Complaint.

6.      Denies the allegations of paragraph 6 of the Complaint.

7.      Admits that the Securities and Exchange Commission ("SEC") and the North American Securities Administrators Association ("NASAA") investigated DBSI's and numerous other broker-dealers' sales practices related to ARS, and refers to the settlement agreements and consent orders for the contents thereof.   Denies the remaining allegations of paragraph 7 of the Complaint.

8.      Denies the allegations of paragraph 8 of the Complaint.

9.      Denies knowledge or information sufficient to form a belief as to the allegations of paragraph 9 of the Complaint.

10.     Admits that DB AG is a major global banking institution based in Frankfurt am Main, Germany, and that DBSI is an indirect subsidiary of DB AG.  Admit that DBSI is (i) a Delaware corporation, (ii) a broker-dealer registered with the SEC, (iii) has its principal place of

business in New York, New York, and (iv) has offices in Boston, Massachusetts.  Denies the remaining allegations of paragraph 10 of the Complaint.

11.     Admits that Akamai's investment guidelines expressly provided that ARS were permissible investments, and refers to Akamai's Treasury Policy Investment Management Guidelines for the contents thereof.  Denies the remaining allegations of paragraph 11 of the Complaint.

12.     Admits that DBSI served as an underwriter for an offering of Akamai's securities, and that DBSI served as a broker for Akamai's cash management account starting in 2005. Denies the remaining allegations of paragraph 12 of the Complaint.

13.     Admits that Akamai opened an account in November 2005, depositing approximately $100 million in proceeds.  Admits that from the time Akamai's account was opened until February 2008, Akamai continued to invest additional monies, and refers to Akamai's account statements for the contents thereof, including the balance of Akamai's account during this period.  Denies the remaining allegations of paragraph 13 of the Complaint.

14.     Refers to Akamai's Treasury Policy Investment Management Guidelines for the contents thereof.  Denies the remaining allegations of paragraph 14 of the Complaint.

15.     Admits that ARS are typically municipal or corporate bonds (or preferred stocks) with long-term maturities for which the interest rates (or dividend yields) are periodically re-set through "Dutch" auctions.  Admits that there are several broad categories of ARS, each backed by a different type of collateral, and each with its own benefits and risks.  Admits that Akamai purchased ARS backed by student loans, which are referred to as "SLARS."   Denies the remaining allegations of paragraph 15 of the Complaint.

16.     Admits that ARS interest rates (or dividend yields) are periodically re-set through "Dutch" auctions.  Denies the remaining allegations of paragraph 16 of the Complaint.

17.     Denies the allegations of paragraph 17 of the Complaint.

18.     Refers to the prospectus or offering statement(s) for the terms of each ARS, including how to bid on the particular ARS and the applicable maximum rate or default rate. Admits that the lowest rate at which all of the securities can be sold is called the "clearing rate" and that is the interest rate (or dividend yield) that applies to the securities until the next scheduled auction.  Admits that if there are not enough bids to cover all of the sell orders in the auction, the auction fails.  Denies the remaining allegations of paragraph 18 of the Complaint.

19.     Admits that typically if an auction fails, none of the holders of the ARS can sell their ARS at auction at that time, but holders continue to receive interest (or a dividend yield), can sell their ARS on the secondary market, and can hold their ARS until it matures or is redeemed.  Denies the remaining allegations of paragraph 19 of the Complaint.

20.     Refers to the prospectus or offering statement(s) for the terms of each ARS, including the applicable maximum rate or default rate.  Denies the remaining allegations of paragraph 20 of the Complaint.

21.     Refers to the prospectus or offering statement(s) for the terms of each ARS, including the applicable maximum rate or default rate and interest rate.  Denies the remaining allegations of paragraph 21 of the Complaint.

22.     Admits that since February 2008, many issuers have redeemed ARS, including SLARS.  Denies the remaining allegations of paragraph 22 of the Complaint.

23.     Admits that DBSI acted as an underwriter, lead manager or co-manager on certain ARS issues, and earned fees in that capacity.  Denies that DBSI acted as a trustee responsible for

gathering and disseminating investment information to security holders.  Denies that DBSI acted as an auction agent.  Denies that DBSI acted on behalf of more than 400 issuers with 2,200 outstanding issues totaling over $115 billion.  Denies the remaining allegations of paragraph 23 of the Complaint.

24.     Denies the allegations of paragraph 24 of the Complaint.

25.     Denies the allegations of paragraph 25 of the Complaint.

26.     Admits that Akamai's Treasury Policy and Investment Management Guidelines state that the "next auction date or reset mechanism will be deemed to be a security's effective maturity," and denies the remaining allegations of paragraph 26 of the Complaint.

27.     Refers to NYSE Hearing Board Decision 07-120 for the contents thereof.  Denies the remaining allegations of paragraph 27 of the Complaint.

28.     Admits that certain ARS auctions managed by DBSI failed in August 2007, and that none of those ARS were backed by student loans.  Denies the remaining allegations of paragraph 28 of the Complaint.

29.     Admits that DBSI's own ARS inventory increased between August 2007 and February 2008.  Denies the remaining allegations of paragraph 29 of the Complaint.

30.     Denies the allegations of paragraph 30 of the Complaint.

31.     Denies that DBSI participated in waivers of maximum interest rates on ARS, and denies knowledge or information sufficient to form a belief as to whether other broker-dealer firms participated in maximum interest rate waivers on ARS.  Denies the remaining allegations of paragraph 31 of the Complaint.

32.     Admits that between August 2007 and December 2007 CIB's, which is a division of DBSI, proprietary ARS holdings increased from approximately $100 million to approximately $325 million.  Denies the remaining allegations of paragraph 32 of the Complaint.

33.     Denies the allegations of paragraph 33 of the Complaint.

34.     Admits that DBSI's own ARS inventory increased between August 2007 and January 2008, at the same time that Akamai's investments in different ARS increased.  Denies that DBSI sold any ARS from its own inventory to Akamai, and denies the remaining allegations of paragraph 34.

35.     Denies the allegations of paragraph 35 of the Complaint.

36.     Admits that in February 2008, DBSI stopped submitting bids for its own account in auctions for which it was the lead manager.  Admits that in February 2008 many ARS auctions failed.  Denies the remaining allegations of paragraph 36 of the Complaint.

37.     Admits that DBSI communicated with Akamai after the auction failures in February 2008.  Denies the remaining allegations of paragraph 37 of the Complaint.

38.     Admits that certain ARS auctions continue to fail, but that several of the SLARS held by Akamai have been redeemed.  Denies the remaining allegations of paragraph 38 of the Complaint.

39.     Refers to DB AG's 2008 Form 20-F for the contents thereof.  Denies the remaining allegations of paragraph 39 of the Complaint.

40.     Admits that DBSI is an indirect subsidiary of DB AG.  Refers to the referenced SEC filings for the contents thereof.  Denies the remaining allegations of paragraph 40 of the Complaint.

41.     Refers to the referenced public filings and press releases for the contents thereof. Denies the remaining allegations of paragraph 41 of the Complaint.

42.     Refers to the settlement term sheet, settlements and consent orders, and DB AG's 2008 Form 20-F for the contents thereof.  Denies the remaining allegations of paragraph 42 of the Complaint.

43.     Admits that DB AG has a code of conduct, and refers to the code for the contents thereof.  Refers to DBSI's Fixed Income Desk manual and DBSI's client advisor(s) manual for the contents thereof.  Denies the remaining allegations of paragraph 43 of the Complaint.

<u>FIRST CAUSE OF ACTION</u>

44.     Reasserts its answer to the allegations of paragraphs 1-43 as if fully set forth herein.

45.     Denies the allegations of paragraph 45 of the Complaint.

46.     Denies the allegations of paragraph 46 of the Complaint.

47.     Denies the allegations of paragraph 47 of the Complaint..

48.     Denies the allegations of paragraph 48 of the Complaint.

<u>SECOND CAUSE OF ACTION</u>

49.     Reasserts its answer to the allegations of paragraphs 1-43 as if fully set forth herein.

50.     Denies the allegations of paragraph 50 of the Complaint.

51.     Denies the allegations of paragraph 51 of the Complaint.

52.     Denies the allegations of paragraph 52 of the Complaint..

53.     Denies the allegations of paragraph 53 of the Complaint.

54.     DB AG denies any factual allegations contained in any Paragraph of the Complaint except as expressly admitted above.

55.     DBAG denies that Akamai is entitled to any of the relief requested in the Prayer for Relief on page 19 of the Complaint or to any other relief.

### First Affirmative Defense

56.     The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

57.     The Complaint fails to plead fraud with particularity.

### Third Affirmative Defense

58.     This "controlling person" action should be stayed pending Akamai's FINRA Arbitration against DBSI.

### Fourth Affirmative Defense

59.     Any losses allegedly suffered by Akamai were caused by its own decisions and market conditions outside of the control of DBSI, and were not caused by actions of DBSI.

### Fifth Affirmative Defense

60.     Akamai expressly assumed the risks inherent in the securities markets and of the damages or losses alleged by entering into the transactions at issue.

### Sixth Affirmative Defense

61.     Akamai is barred from any recovery against DBSI because Akamai received written notice of and ratified each transaction complained of and upon which recovery is sought.

### Seventh Affirmative Defense

62.     Akamai is barred from any recovery against DBSI by the doctrines of waiver, ratification, estoppel, and acquiescence.

**Eighth Affirmative Defense**

63.     Akamai is estopped by its own conduct from asserting the claims alleged in the Complaint.

**Ninth Affirmative Defense**

64.     Akamai is barred from any recovery against DBSI because Akamai contractually agreed to hold DBSI harmless from and to pay DBSI promptly on demand any and all losses.

**Tenth Affirmative Defense**

65.     Akamai failed to take reasonable steps to mitigate the alleged damages or losses suffered.

**Eleventh Affirmative Defense**

66.     Akamai failed to exercise reasonable or ordinary care, caution, or prudence with respect to the matters alleged in the Complaint.  Accordingly, Akamai is barred from obtaining any award, or any award must be reduced by the percentage to which Akamai's negligence or fault contributed to any damages or losses allegedly suffered.

**Twelfth Affirmative Defense**

67.     Akamai has no private right of action for alleged violations of NYSE, NASD, FINRA or other securities industry rules.

**Thirteenth Affirmative Defense**

68.     DBSI acted reasonably and in good faith with respect to Akamai and the securities transactions at issue.

**Fourteenth Affirmative Defense**

69.     The handling of Akamai's accounts was in accordance with and in compliance with applicable brokerage industry standards and guidelines and all regulatory requirements.

### Fifteenth Affirmative Defense

70.     Akamai's losses, if any, were not proximately caused by DBSI.

### Sixteenth Affirmative Defense

71.     Akamai's claims are barred by the "second investment decision" rule.

### Seventeenth Affirmative Defense

72.     Akamai's claims are barred, in whole or in part, by the applicable statutes of limitations, statutes of repose, and/or laches.

### Eighteenth Affirmative Defense

73.     Akamai has not suffered any legally cognizable damages.

### Nineteenth Affirmative Defense

74.     One or both Plaintiffs lack standing.

### Twentieth Affirmative Defense

75.     Section 410(a) of the Massachusetts Uniform Securities Act, M.G.L. 110A § 410(a), does not apply to secondary market transactions.

### Twenty-First Affirmative Defense

76.     DBSI and DB AG did not know, and in the exercise of reasonable care could not have known, of any alleged untruth or omission.

### Twenty-Second Affirmative Defense

77.     All activity in Akamai's account was suitable for and consistent with Akamai's stated investment objectives and financial situation.

**Twenty-Third Affirmative Defense**

78.     DB AG has not knowingly or intentionally waived any applicable defense and reserves the right to assert and rely on such other applicable defenses as may become available by law, or pursuant to statute, or appear during the proceedings in this action.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Defendant Deutsche Bank AG respectfully requests and pray as follows:

1.     That the Complaint be dismissed with prejudice in its entirety;

2.     That Defendant be granted its costs and disbursements in this matter, including reasonable attorneys' fees; and

3.     That the Court grant such other and further relief to Defendant as the Court deems just and proper.

Dated:  March 1, 2011

RESPECTFULLY SUBMITTED:
DEUTSCHE BANK AG,
Defendant,
By its attorneys:

_____/s/ Toby S. Soli_____
Stephen L. Saxl (admitted *pro hac vice*)
Toby S. Soli (admitted *pro hac vice*)
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
Tel: (212) 801-6400
Fax: (212) 801-9200
saxls@gtlaw.com
solit@gtlaw.com

A. John Pappalardo, BBO #388760
Victor H. Polk, Jr., BBO #546099
GREENBERG TRAURIG, LLP
One International Place
Boston, MA  02110
Tel.: (617) 310-6000
Fax: (617) 310-6001
pappalardoj@gtlaw.com
polkv@gtlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via U.S. first class mail to those indicated as non-registered participants on March 1, 2011.


_____/s/ Toby S. Soli_____ \_
Toby S. Soli